UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


JERRY LUIS SANTIAGO,            )
                    Plaintiff  )
                               )
                               )
        v.                     )   Civil Action No. 11-30248-KPN
                               )
                               )
CHRISTOPHER KEYES, individually )
and in his capacity as a Massachusetts )
State Trooper,                  )
CARLOS RIVERA, individually    )
and in his capacity as a Massachusetts )
State Trooper,                  )
RICHARD ROE, individually and in his )
capacity as a Hampden County   )
Prosecutor AND                 )
COMMONWEALTH OF                )
MASSACHUSETTS STATE POLICE,    )
                    Defendant  )


MEMORANDUM AND ORDER REGARDING DEFENDANTS
KEYES AND RIVERA'S MOTIONS TO DISMISS
(Document Nos. 29 and 49)
August 21, 2012

NEIMAN, U.S.M.J.

Jerry Luis Santiago ("Plaintiff") claims that he was arrested and detained

because he was wrongfully, and without justification, believed to be the subject of a

New York arrest warrant.  Asserting violations of both federal and state law, Plaintiff

originally filed this action in state court against the Commonwealth of Massachusetts

Department of State Police ("Department of State Police"), the arresting state trooper

Christopher Keyes ("Keyes"), and two unidentified defendants, John Doe, a state

trooper who allegedly interrogated him following his arrest, and Richard Roe, an

assistant district attorney who allegedly made misrepresentations regarding his identity

in state court.  Plaintiff has since amended his complaint to identify Carlos Rivera

("Rivera") as the state trooper who allegedly interrogated him.

On November 8, 2011, Keyes removed the action to this court because it raised,

among other claims, a federal question pursuant to 28 U.S.C. § 1331.  In a prior

memorandum and order, the court denied Plaintiff's motion to remand and dismissed

certain claims against the Department of State Police. (*See* Document No. 15.)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Keyes now moves to dismiss

Plaintiff's Massachusetts Civil Rights Act ("MCRA") claim against him in its entirety as

well as all claims asserted against him in his official capacity; other claims against him

go unchallenged.  For his part, Rivera moves to dismiss all of Plaintiff's claims against

him pursuant to Federal Rule of Civil Procedure 12(b)(6).

The parties have consented to have the undersigned decide all matters in this

case pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  For the reasons that follow,

the court will allow Keyes' motion to dismiss in full and Rivera's motion in part.

## I.  Background

The following facts come directly from the complaint and are stated in a light

most favorable to Plaintiff, the party opposing dismissal.  *Young v. Lepone*, 305 F.3d 1,

8 (1st Cir. 2002).[1]

On or about August 20, 2008, Plaintiff, a Massachusetts resident who hails from

Puerto Rico, was a passenger in a motor vehicle driven by a friend.  (Complaint ¶¶ 8-

---

[1] The court notes that, subject to certain amendments, the facts set forth here are largely identical to those set forth in the court's March 8, 2012 order regarding Plaintiff's motion to remand and the Department of State Police's motion to dismiss.  (*See* Document No. 15.)

9.)  The vehicle was stopped by officers of the Department of State Police and Plaintiff

was asked for identification.  Plaintiff provided the officers with his Massachusetts

driver's license, which contained his photograph and correct birth date.  (Id. ¶ 9.)

Ostensibly believing Plaintiff was the subject of an outstanding New York arrest warrant,

the officers instructed Plaintiff to exit the vehicle and lie face down on the ground, and

then searched him and handcuffed him.  (Id.)

Upon being arrested, Plaintiff was taken to a state police barracks in Springfield,

Massachusetts.  (Id. ¶ 10.)  At the barracks, Plaintiff informed an officer that he is deaf

and does not speak English; as a result, he was interrogated by Rivera, a Spanish-

speaking State Trooper.  (Id.)  Plaintiff explained to Rivera that his wallet containing

identification and motor vehicle license had been stolen from him while he was in Puerto

Rico some time before and that he was the victim of identity theft and could not be the

subject of the arrest warrant.  (Id.)

Plaintiff was thereafter arraigned in Chicopee District Court. (Id. ¶ 13.)  At

Plaintiff's arraignment, the judge allegedly questioned the Assistant District Attorney

("ADA"), an unidentified defendant, as to whether Plaintiff had been correctly identified

as the subject of the arrest warrant.  It is not clear if the ADA provided an answer at the

arraignment, but the ADA appears to have asked the Department of State Police if

Plaintiff's fingerprints matched those that it had received from New York and was

(mis)informed that they did.  (Id.)

Plaintiff was placed in custody until August 28, 2008, when he was brought back

to the Chicopee District Court.  Plaintiff asserts that, at that time, the ADA, based on

information he had received from the Department of State Police, misrepresented to the

court that Plaintiff's fingerprints matched those of the subject of the New York arrest

warrant and that Plaintiff had been correctly identified as the subject of that warrant.  (Id.

¶ 14.)  Plaintiff was thereafter extradited to New York State.  (Id. ¶ 15.)  On September

19, 2008, a justice of the Supreme Court of the State of New York determined that

Plaintiff was not the proper subject of the arrest warrant.  (Id.)

        In total, Plaintiff spent thirty-two days in custody.  (Id. ¶ 11.)  It is Plaintiff's

contention that, given the discrepancies between his appearance and the description

and photograph of the proper target of the warrant as well as the fact that his

fingerprints did not match those of the target of the warrant, he should not have been

arrested and his protests of mistaken identity did not produce an adequate or competent

investigation by either the Department of State Police or the District Attorney's Office.

(Id. ¶ 12.)  It is Plaintiff's belief that, had such an investigation taken place, he would

have been released from custody far sooner than he was.  (Id.)

        Plaintiff's complaint contains five counts, three of which apply to both Keyes and

Rivera: (1) claims of conspiracy to violate, as well as violation of, the Federal Civil

Rights Act pursuant to 42 U.S.C. §§ 1983 and 1985 (Count I), (2) intentional infliction of

emotional distress (Count II), and (3) violation of the Massachusetts Civil Rights Act

(Count V).

## II.  Discussion

        When faced with a Rule 12(b)(6) motion to dismiss for failure to state a claim, the

court must accept the allegations of the complaint as true, drawing all reasonable

inferences in favor of the plaintiff.  *See Albright v. Oliver*, 510 U.S. 266, 268 (1994);

*Coyne v. City of Somerville*, 972 F.2d 440, 443 (1st Cir. 1992).  Moreover, "Federal Rule

of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

what the ... claim is and the grounds upon which it rests.'" *Sepulveda–Villarini v. Dep't*

*of Educ. of P.R.*, 628 F.3d 25, 28 (1st Cir.2010).  The Supreme Court has made clear

that, under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint that states a

plausible claim for relief, on its face, will survive a motion to dismiss. *See Ashcroft v.*

*Iqbal*, 129 S.Ct. 1937, 1940 (2009).  The Court explained that "[a] claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at

1949.

A. Keyes' Motion to Dismiss

      1. MCRA Claim Asserted Against Keyes in his Individual Capacity (Count V)

      To establish an MCRA claim, Plaintiff must prove that his exercise or enjoyment

of rights secured by the constitution or laws of either the United States or

Massachusetts has been interfered with, or attempted to be interfered with, by threats,

intimidation or coercion.  *See* MASS. G. L. c. 12, §§ 11H and 11I.  Although the MCRA is

the state "counterpart" to section 1983 and is basically "coextensive with" the federal

statute, there are some important differences.  For example, to succeed on an MCRA

claim, a plaintiff, unlike with section 1983, must show that the derogation of rights

occurred "by threats, intimidation or coercion." *Bally v. Northeastern Univ.*, 532 N.E.2d

49, 52 (Mass. 1989).  "A 'threat' means the 'intentional exertion of pressure to make

another fearful or apprehensive of injury or harm.'" *Goddard v. Kelley*, 629 F. Supp. 2d

115, 128 (D. Mass. 2009) (quoting *Planned Parenthood League of Massachusetts, Inc.*

*v. Blake*, 631 N.E.2d 985 (1994)).  "Intimidation" means putting a person in fear for the

purpose of compelling or deterring his or her conduct.  *Id.*  "Coercion" means application

of physical or moral force to another to constrain him to do against his will something he

would not otherwise do.  *Id.*  Accordingly, the MCRA contemplates a two-part sequence:

liability may be found where (1) the defendant threatens, intimidates, or coerces the

plaintiff in order to (2) cause the plaintiff to give up something that he has the

constitutional right to do.  *Id.* at 128.

Plaintiff asserts that the arrest conducted by Keyes -- which he argues was not

based on probable cause -- both violated his Fourth Amendment right against unlawful

arrest and seizure and constitutes intimidation or coercion under the MCRA.  Keyes

does not dispute that the arrest, if conducted without probable cause, would violate

Plaintiff's constitutional rights; he maintains, however, that Plaintiff's arrest was based

on probable cause.  Moreover, Keyes asserts that Plaintiff has not pled any facts from

which the court may draw a reasonable inference that he engaged in threats,

intimidation, or coercion.

As an initial matter, the court notes that Keyes likely did have probable cause on

which to make the arrest.  Notwithstanding the issues raised by Plaintiff regarding the

differences in physical appearance between him and the actual subject of the arrest

warrant, it is undisputed at this stage that the warrant pursuant to which Keyes arrested

Plaintiff had been issued for someone with Plaintiff's name and social security number.

In any event, the court need not make a determination regarding probable cause at this

juncture and will instead assume for present purposes that Keyes lacked probable

cause to arrest Plaintiff.  Accordingly, the court considers Plaintiff's arrest a

constitutional violation.  That, however, is only half Plaintiff's battle; he must still

establish that Keyes, in the course of the arrest, threatened, intimidated, or coerced him

to give up something that he has the constitutional right to do.  In this regard, Plaintiff

contends that an arrest conducted without probable cause satisfies both prongs of the

MCRA analysis, that is, an unlawful arrest constitutes a threat, intimidation, or coercion

as well as a constitutional violation.  The court disagrees.

The Supreme Judicial Court ("SJC") has ruled that "[a] direct violation of a

person's rights does not by itself involve threats, intimidation, or coercion and thus does

not implicate the [MCRA]."  *Longval v. Comm'r. of Corr. et. al.*, 535 N.E.2d 588, 593

(Mass. 1989).  The SJC noted that if, in the context of a direct violation, the officials had

"some further purpose in treating [the plaintiff] as they did, threats, intimidation, or

coercion might be involved," but that "[c]onduct, even unlawful conduct . . . lacks these

qualities when all it does is take someone's rights away directly."  *Id.*  In *Planned*

*Parenthood League*, the SJC again considered whether a direct violation could, by

itself, satisfy the dual requirements of the MCRA and, again, answered that question in

the negative; the court concluded that defendants' invasion and blockade of abortion

clinics violated the MCRA because the "case involved *more than simple direct action* in

denial of the rights of women seeking abortion services," and "[t]here is no doubt that

the defendants' conduct involved physical confrontations accompanied by threats of

harm."  *Planned Parenthood League*, 631 N.E.2d at 90 (emphasis added).

Granted, there is some dispute over whether the SJC's decision in *Planned*

*Parenthood League* actually narrowed the court's decision in *Longval* and allowed for

direct violations to satisfy both prongs of the MCRA analysis.  *Compare Inman v.*

*Siciliano,* 2012 WL 1980408, at *14 (D. Mass. May 31, 2012) ( ("The seizure itself is the alleged constitutional violation.  That violation cannot satisfy both the 'coercion' and 'violation' elements of an MCRA claim."), *Parks v. Leicester*, 2011 WL 864823, at *5 (D. Mass. Mar. 9, 2011) (noting that an arrest "of course can constitute a form of coercion," but that "the element of 'threats, intimidation, or coercion' must be *separately* present *in addition* to the violation of rights.") (emphasis added), *Goddard*, 629 F. Supp. 2d at 128-29 (concluding that applying the MCRA to a false arrest claim would "torture the statute well beyond its plain meaning" because it would mean that defendants "threatened arrest in order to cause [the plaintiff] to give up his right to be free from false arrest"), *and Gallagher v. Commonwealth of Mass.*, 2002 WL 924243, at *3 (D. Mass. Mar. 11, 2002) (noting that the "use of force is not, in itself, 'coercive,' within the meaning of the [MCRA] unless such force is inflicted in order to achieve 'some other purpose'") *with Nuon v. City of Lowell*, 768 F. Supp. 2d 323, 335 n.8 (D. Mass. 2011) (noting that an arrest without probable cause establishes liability under the MCRA because it constitutes both a constitutional violation and coercion), and *Daley v. Harbor*, 234 F. Supp. 2d. 27, 31-32 (D. Mass. 2002) (concluding that the SJC in *Planned Parenthood League* "significantly narrowed its holding in *Longval* and rejected precisely the 'direct violation' argument").  For the following reasons, however, the court believes that the better approach is that taken by courts concluding that "the constitutional violation itself cannot also serve as the prerequisite 'threats, intimidation or coercion' under the MCRA."  *Gallagher*, 2002 WL 924243, at *3.

First, it is a basic canon of statutory construction that statutes be interpreted so that, "if it can be prevented, no clause, sentence, or word shall be superfluous, void, or

insignificant."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001); *Herman v. Hector I. Nieves Transp., Inc.*, 244 F.3d 32, 36 (1st Cir. 2001) ("A primary canon of statutory construction is that a statute should be construed so as not to render any of its phrases superfluous.") (citation omitted).  Plaintiff's reading of the statute here, however, would eliminate the MCRA's requirement that a plaintiff establish threats, coercion, or intimidation *in addition* to a constitutional violation and would, in effect, render claims pursuant to the MCRA no different than those asserted under section 1983, its federal counterpart.  *See Titus v. Town of Nantucket*, 840 F. Supp. 2d 404, 416 (D. Mass. 2011) ("The MCRA is coextensive with [section 1983], except that . . . the derogation of secured rights must occur by threats, intimidation or coercion.  This additional requirement distinguishes valid claims under the MCRA from those under section 1983.") (citation omitted); *see also Goddard v. Kelley*, 629 F. Supp. 2d 115, 128-29 (D. Mass. 2009) (concluding that applying the MCRA to a false arrest claim would "torture the statute well beyond its plain meaning" because it would mean that defendants "threatened arrest in order to cause [the plaintiff] to give up his right to be free from false arrest.").

Second, and more importantly, the court believes that a fairer reading of the SJC's decisions maintains a separation of the elements of "violation" and "threats, intimidation or coercion" in the MCRA.  In both *Longval*, 535 N.E.2d at 588 and *Planned Parenthood League*, 631 N.E.2d at 989-90, the SJC noted that a direct violation, without more, does not satisfy the MCRA.  Indeed, in *Planned Parenthood League*, 631 N.E.2d at 989, the court appears to have reaffirmed that holding, clarifying only that if "direct action also includes threats against, or intimidation or coercion of, a particular individual

or individuals, liability under the MCRA can be established"; thus, the court found, the defendants' refusal to allow individuals to enter abortion clinics constituted intimidation or coercion distinct from the violation itself, denying individuals access to abortion services.

Here, in contrast, Plaintiff admittedly seeks to establish liability under the MCRA by claiming that his right to be free from unlawful seizure and arrest was violated by his having been seized and arrested.  That approach, in the court's estimation, wrongfully attempts to graft one act onto two distinct burdens.  *See Gallagher*, 2002 WL 924243, at *3 (concluding that "plaintiff cannot establish a violation of the MCRA by claiming that his right to be free from excessive force was violated *by means of force*.") (emphasis in original).  To the extent, then, that some courts have found that the SJC, in *Planned Parenthood League*, "significantly narrowed its holding in *Longval* and rejected . . . the 'direct violation' argument," this court simply and respectfully disagrees.  *See also Parks*, 2011 WL 864823, at *5 n.3 ("The Court disagrees with plaintiff's contention that this principle [that a direct violation is, alone, insufficient to sustain a claim under the MCRA] was 'significantly narrowed' or rejected in [*Planned Parenthood League*].").

Persevering, Plaintiff argues that even if the arrest itself did not constitute "threats, intimidation, or coercion," Keyes conceivably engaged in such conduct after Plaintiff's arrest and transportation to the police barracks.  The pleadings, however, do not allege with specificity that Keyes was involved at any point with Plaintiff or in Plaintiff's proceedings following the arrest, much less that Keyes engaged in any conduct that could be deemed a "threat, intimidation, or coercion" for purposes of the MCRA.  To be sure, Plaintiff maintains that dismissal would be inappropriate because

10

"only discovery will disclose whether [Keyes] was or was not involved in the events that occurred after his initial arrest and transport of [Plaintiff]."  (Pl. Opp. to Keyes Mot. to Dismiss at 3.)  Nonetheless, in the court's view, dismissal is warranted given the dearth of any information that would link Keyes to an event -- beyond Plaintiff's own conjecture that Keyes might be the state police officer who misrepresented that Plaintiff's fingerprints were a match.  *See Brown v. Latin Am. Music Co., Inc.*, 498 F.3d 18, 24 (1st Cir. 2007) ("In opposing a motion for dismissal for failure to state a claim . . . general denials are insufficient and the court is not required to credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.").  Accordingly, the court will allow Keyes' motion to dismiss Count V against him in his individual capacity.

2. Claims Against Keyes in His Official Capacity

As indicated, the complaint asserts claims against Keyes pursuant to 42 U.S.C. §§ 1983 and 1985 (Count I), the MCRA (Count V), and state common law (Count II).  For the following reasons, the court finds that Keyes is entitled to dismissal of each of these claims insofar as they are asserted against him in his official capacity.

To begin, Keyes is entitled to dismissal of Plaintiff's claims against him in his official capacity brought under sections 1983 and 1985.  As the Supreme Court made clear in *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  Accordingly, the Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  *Id.*  The same rule applies for claims

brought pursuant to section 1985. *See New Jersey Sand Hill Band of Lenape & Cherokee Indians v. Corzine*, 2010 WL 2674565, at \*6 (D. N.J. Jun. 30, 2010) ("[B]ecause states and state officials sued in their official capacities are not 'persons' and cannot be liable under § 1983, they cannot be liable under § 1985 either."). Similarly, Keyes cannot be held liable for claims of intentional torts asserted against him in his official capacity. *See Villanueva v. Franklin County Sheriff's Office*, 2012 WL 1021659, at \*4 (D. Mass. Mar. 27, 2012) (concluding that defendants may "be held liable in their individual capacities, but not in their official capacities, for intentional torts.") (citing MASS. G. L. c. 258, § 10(c)).

Plaintiff argues, however, that suits against state officers in their official capacities are permitted under the MCRA. To the contrary, courts have routinely held that the MCRA, like sections 1983 and 1985, bars such suits. *See Maraj v. Massachusetts*, 836 F. Supp. 2d 17, 40 (D. Mass. 2011) ("Plaintiff's MCRA claims . . . against the individual officers in their official capacities, fail on the threshold ground that the Commonwealth and its agencies cannot be sued under the MCRA."); *Villanueva*, 2012 WL 1021659, at \*3 (dismissing MCRA claim against defendants in their official capacities because "[s]tate employees sued in their official capacities are not 'persons' within the meaning [of] chapter 12 [of the MCRA]."). In any event, as discussed, Plaintiff's complaint does not plead a plausible cause of action as to Keyes under the MCRA.

The court therefore finds dismissal appropriate as to all claims against Keyes in his official capacity; with the exception of Count V discussed above, therefore, all claims asserted against him in his individual capacity survive.

B. <u>Rivera's Motion to Dismiss</u>

As a preliminary matter, for the same reasons that justify dismissal of all claims directed against Keyes in his official capacity, the court will allow Rivera's motion to dismiss all claims asserted against him in his official capacity.  (*See* discussion *supra* Part II.A.2.)

1. <u>Section 1983 and 1985 Claims (Count I)</u>

Plaintiff alleges that Rivera violated his federal rights by (1) failing to investigate whether Plaintiff was correctly detained despite his protestation of innocence and (2) conspiring with Keyes to keep him detained in prison.

To state a claim under section 1985, a plaintiff must allege: (1) a conspiracy, (2) a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property or (b) a deprivation of a constitutionally protected right.  *Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 4 (1st Cir. 2012).  "A section 1985 claim requires some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Id.* (internal citation omitted).  Here, however, Plaintiff has not alleged any such animus and, in fact, concedes in his opposition that "section 1985 may not be apt."  Moreover, the court finds no indication in Plaintiff's complaint of any agreement or conspiracy between Rivera and Keyes.  The court will therefore allow Rivera's motion to dismiss Count I to the extent Plaintiff asserted a section 1985 claim against him.

As for section 1983, liability "may be imposed both for action that deprives a plaintiff of a constitutional right and for failure to act, when there is a duty to act, to

prevent such a deprivation." *See Clark v. Taylor*, 710 F.2d 4, 9 (1st Cir. 1983). The First Circuit has noted that liability for failure to act "has most often been found when the defendant is in a supervisory position over the parties whose conduct plaintiff complains of"; even absent such authority, however, "a party's position of responsibility may impose on him a duty to intervene to prevent a constitutional violation." *Id.* And, at least in the context of excessive force, the First Circuit has found that "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance." *Davis v. Rennie* 264 F.3d 86, 98 (1st Cir. 2001).

Although not addressed in any detail by either party, the appropriate standard to apply to Rivera's inaction appears to be somewhat of an open question in this Circuit. *See Gero v. Henault*, 740 F.2d 78, 85 (1st Cir. 1984) (First Circuit expressing reservations about whether the standard of liability it announced regarding a prison official's failure to act -- failure to act had to reflect a "reckless or callous indifference to the rights and safety of the prisoners in his charge" -- could be applied to other state officials). Accordingly, the court is unwilling at this time to allow Rivera's motion as to the section 1983 claim against him under either standard.

In essence, Plaintiff alleges that Rivera failed to act on information which would have exonerated him and failed to investigate discrepancies in the available information regarding Plaintiff and the information in the warrant. In this regard, Plaintiff, in his complaint, details various items of information that he believes Rivera knew, or should have known, at the time he questioned Plaintifft, including important discrepancies between Plaintiff's appearance and the description and photograph of the proper target

of the warrant, as well as the fact that Plaintiff's fingerprints did not match those of the

target of the warrant.  (Complaint ¶ 12.)  In short, Plaintiff asserts that Rivera was not

acting as a mere interpreter.  Drawing all inferences in favor of Plaintiff as is required on

a motion to dismiss, the court believes that his allegations, if true, could establish that

Rivera's failure to intervene or investigate constituted either negligence or deliberate

indifference.  The court, of course, need not address that issue at this time; it merely

finds Plaintiff's allegations sufficient to warrant discovery on the issue.

### 2. MCRA Claim (Count V)

In response to Rivera's motion, Plaintiff asserts that his MCRA claim against

Rivera should not be dismissed because "an arrest without probable cause has been

held to constitute coercion under [the MCRA]" and because, although Rivera "did not

arrest [Plaintiff], he perpetuated his confinement at a time when he knew or should have

known that [the police officers] had the wrong man in the police station."  (Pl. Opp. to

Rivera Mot. to Dismiss at 8.)  As discussed, however, the court finds that Plaintiff cannot

rely on the arrest as both the constitutional violation and the evidence of threats,

intimidation, or coercion.  (*See* discussion *supra* Part II.A.1.)  More importantly, Plaintiff

has admitted that Rivera was not involved in the arrest and has not suggested how

Rivera's "perpetuation" of his confinement constitutes "threats, intimidation, or coercion,"

as contemplated by the MCRA.  *See Goddard*, 629 F. Supp. 2d at 128 (defining those

terms).  Dismissal is therefore appropriate on this ground as well.

### 3. Claim of Intentional Infliction of Emotional Distress (Count II)

To establish his claims against Rivera for the intentional infliction of emotional

distress, Plaintiff must demonstrate that: (1) Rivera intended to cause, or should have

known that his conduct would cause, emotional distress; (2) Rivera's conduct was extreme and outrageous; (3) Rivera's actions caused him distress; and (4) the emotional distress sustained by him was "severe" and of a nature that no reasonable person could be expected to endure it.  *Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 318-19 (Mass. 1976).  The initial question of whether the complained-of conduct was "extreme and outrageous" may be determined as a matter of law.  *Sena v. Commonwealth*, 629 N.E.2d 986, 994 (Mass. 1994).  This standard has been set "very high" even at the motion to dismiss stage, so as to "avoid[ ] litigation in situations where only bad manners and mere hurt feelings are involved."  *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) (quoting *Agis*, 355 N.E.2d at 319).

The court does not believe that Plaintiff has alleged any conduct on Rivera's part that meets this standard for the intentional infliction of emotional distress.  Plaintiff's complaint contains only a single allegation specific to Count II, namely, that the "aforesaid acts and conduct of the defendants Keyes, Roe, and [Rivera] were extreme and outrageous and served no legitimate purpose."  (Complaint ¶ 29.)  However, the only specific act contained in the complaint linked to Rivera was his role in questioning Plaintiff at the barracks following his arrest.  (Id. ¶ 10.)  Thus, Plaintiff's intentional infliction of emotional distress claim against Rivera boils down to Rivera's decision not to investigate whether Plaintiff had been falsely arrested given Plaintiff's protestations of innocence and the availability of various items of potentially exonerating evidence.  (Id. ¶¶ 10, 12.)  In the court's view, this conduct, as a matter of law, is simply not extreme and outrageous.  *See Willoughby v. Town of Tisbury*, 750 F. Supp. 2d 374, 384 (D. Mass. 2010) (finding that a police officer's decision not to investigate a father's

complaint that his ex-girlfriend provided drugs to his minor daughter was not "extreme and outrageous" because a "police officer's decision not to investigate a case cannot be considered 'utterly intolerable in a civilized community.'"). Accordingly, the court will allow Rivera's motion to dismiss as to Count II.

### III. CONCLUSION

For the reasons stated, Keyes' motion to dismiss is ALLOWED in its entirety, and Rivera's motion to dismiss is ALLOWED but in part only. As a result, the following counts remain with respect to Keyes: Counts I and II insofar as they state claims against him in his individual capacity. Further, the following count remains against Rivera: Count I insofar as it states a claim against him in his individual capacity under section 1983.

IT IS SO ORDERED.

DATED: August 21, 2012                         /s/ Kenneth P. Neiman
                                              KENNETH P. NEIMAN
                                              U. S. Magistrate Judge