UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JERRY LUIS SANTIAGO,            )
                Plaintiff       )
                            )
                            )
         v.       )   Civil Action No. 11-30248-KPN
                            )
                            )
COMMONWEALTH OF                 )
MASSACHUSETTS DEPARTMENT        )
OF STATE POLICE, CHRISTOPHER    )
KEYES, CARLOS RIVERA, AND       )
RICHARD ROE,                    )
                Defendants  )

MEMORANDUM AND ORDER WITH REGARD TO
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
(Document Nos.58, 60 and 62)
February 22, 2013

NEIMAN, U.S.M.J.

      Presently before the court are motions by Carlos Rivera ("Rivera"), Christopher Keyes ("Keyes"), and the Commonwealth of Massachusetts Department of the State Police ("State Police Department") (collectively, the "Defendants") for summary judgment on a variety of federal and state claims brought by Jerry Luis Santiago ("Plaintiff").  The claims in this case arise out of a case of mistaken identity that led to Plaintiff's arrest on a warrant intended for someone else.

      At the motion hearing on January 9, 2013, Plaintiff's counsel indicated that he was no longer pursuing any claim against the as-yet-to-be formally identified Richard Roe, a Hampden County District Attorney ("Roe"), named in the complaint.  In addition, Plaintiff's voluntary dismissal of Roe, along with the court's prior dismissal of the section

1985 conspiracy claim against Rivera, led Plaintiff to drop his section 1985 conspiracy claim against Keyes as well.  Plaintiff also acknowledged that his claim against the state police is directed only at the State Police Department and not the Commonwealth of Massachusetts.  Accordingly, the only remaining claims are: Count One (section 1983 claims for violation of the Fourteenth Amendment against Rivera and violation of the Fourteenth and Fourth Amendments against Keyes); Count Two (intentional infliction of emotional distress against Keyes); Count Three (gross negligence/ unconstitutional policy or custom against the State Police Department); and Count Four (negligence under the Massachusetts Tort Claims Act pursuant to Mass. Gen. Laws ch. 258 § 2 against the State Police Department).

The parties have consented to this court's jurisdiction.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons which follow, the court will allow Rivera's motion for summary judgment (Document No. 60) and will allow in part and deny in part the motions by both Keyes and the State Police Department (respectively, Document Nos. 62 and 58).

## I. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must construe the facts in a light most favorable to the non-moving party.  *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003).  Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable

law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## II. DISCUSSION

The facts of this case were set forth in detail by this court in Document Nos. 15 and 54 and will be revisited here only where necessary.

A. <u>Rivera's Motion for Summary Judgment</u>

Plaintiff's remaining claim against Rivera, a section 1983 claim for violation of his Fourth Amendment rights, is based on Rivera's alleged role in Plaintiff's detention subsequent to his arrest. In denying Rivera's earlier motion to dismiss this particular claim, the court explained that if Plaintiff's assertion that Rivera "was not acting as a mere interpreter" were true, "Rivera's failure to intervene or investigate [could] constitute either negligence or deliberate indifference" in violation of Plaintiff's constitutional rights. (Document No. 54 at 14.)   Rivera, by way of background, was asked to act as an interpreter for Plaintiff after Keyes brought him to the State Police barracks; in that capacity; Rivera also allegedly told Plaintiff's wife that Plaintiff was arrested because his fingerprints matched those of an individual wanted in New York. (Opp. to Mot. for Summary Judgment, Ex. M at 31.)

Rivera presently moves for summary judgment based on the dearth of facts supporting Plaintiff's claim. He first argues that, as a mere interpreter, he had no role in Plaintiff's detention and, therefore, cannot be liable for any constitutional deprivation Plaintiff may have suffered. Second, Rivera argues, to the extent Plaintiff seeks to hold

him liable for a failure to act to end his detention, that claim is not supported by well-settled law.  In this vein, Plaintiff conceded at oral argument that, at best, discovery has established that Rivera was only "minimally involved" in his detention.  Actually, discovery since the court's earlier denial of Rivera's motion to dismiss establishes that Rivera was not involved in Plaintiff's arrest and did not have any involvement with Plaintiff's detention subsequent to his initial role as interpreter at the State Police barracks.

Given this posture, the court will grant Rivera's motion for summary judgment.  The evidence offered by both parties demonstrates that Rivera merely acted as an interpreter when Plaintiff was brought to the State Police barracks and had no involvement in his detention.  Accordingly, Rivera did not have an obligation to investigate Plaintiff's claims of innocence.  *See Baker v. McCollan*, 443 U.S. 137, 145-146 (1979) (police officers have no affirmative obligation to investigate claims of innocence raised during a relatively short period of confinement).  Even if Rivera had believed Plaintiff's protestations of innocence, he would not have been permitted to release him in the short period of time before he was brought before a judge.  *See Brady v. Dill*, 187 F.3d 104, 112 (1st Cir. 1999) (after an arrest is made, "the ordinary course is for the prosecutor to decide whether to go forward, and if he elects to proceed, for the judicial branch to make the final ascertainment of guilt or innocence - not for the police to take matters into their own hands").  Given the absence of any countervailing evidence, Plaintiff has failed to show that Rivera had a role in depriving him of any constitutional right.

B. Keyes's Motion for Summary Judgment

The remaining claims against Keyes in his individual capacity are Count One, a section 1983 claim for violation of Plaintiff's Fourth and Fourteenth Amendment rights, and Count Two, a claim asserting intentional infliction of emotional distress. Keyes moves for summary judgment on Count One based on qualified immunity and argues that Plaintiff has not alleged sufficient facts to support his claim for emotional distress in Count Two. For the reasons that follow, the court will allow Keyes's motion with regard to Count One but only in part.

1. Section 1983 claims

Plaintiff's section 1983 claims are based on his assertion that Keyes not only violated his Fourth Amendment rights by arresting him without probable cause but, as well, subsequently violated his Fourteenth Amendment rights by depriving him of due process which, in turn, improperly prolonged his detention. To prevail on his section 1983 claims, Plaintiff must show that Keyes, acting under color of state law, deprived him of rights secured by the Constitution and that Keyes's conduct was the cause in fact of the alleged deprivation. *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008) (quoting *Rodriguez-Cirilo v. Garcia*, 115 F.3d 50, 52 (1st Cir. 1997)). Keyes, it should be noted, does not dispute that he was acting under color of state law at all relevant timest. At issue, then, is whether Keyes deprived Plaintiff of his constitutional rights.

a. Plaintiff's Fourth Amendment claim

The Fourth Amendment guarantees the right of the people to be free from "unreasonable searches and seizures." U.S. CONST. AMEND. IV. Plaintiff argues that Keyes violated this right by arresting him without probable cause. His argument to this effect is two-fold. First, Plaintiff argues that Keyes lacked probable cause to even ask

him, as a passenger, for identification.  Second, Plaintiff asserts that there was no probable cause to arrest him given the discrepancies between the New York warrants and Plaintiff's physical appearance.  The court addresses each argument in turn.

    i. <u>The initial inquiry</u>

To recap: Plaintiff was riding as a passenger in a car that Keyes stopped after noticing that it had a rejected inspection sticker in the front window.  After the driver of the car identified himself, Keyes asked Plaintiff for identification as well.  Plaintiff gave Keyes a valid Massachusetts drivers license, at which point Keyes returned to his cruiser and asked a State Police dispatcher to run Plaintiff's name through the National Crime Information Center ("NCIC") system; the dispatcher did so and informed Keyes that Plaintiff's name and date of birth matched two NCIC warrants from the state of New York.  Shortly thereafter, Keyes arrested Plaintiff based on the outstanding warrants and brought him to the State Police barracks.

The legal premise on which the first part of Plaintiff's Fourth Amendment claim is based has evolved in various memoranda to the court.  Plaintiff's most focused argument appears to be that Keyes impermissibly prolonged his seizure when he improperly asked for Plaintiff's identification and then ran his identification through the NCIC system, leading to Plaintiff's arrest on outstanding warrants.  For his part, Keyes argues that the inquiry was justified and reasonable because Plaintiff was not wearing his seatbelt, which itself is grounds for a traffic citation, and that, in any event, the inquiry did not measurably prolong the duration of the stop.  Plaintiff, in turn, responds that he was wearing his seatbelt and only unfastened it to obtain his identification; because Plaintiff is the non-moving party, the court must defer to those factual

assertions. *Morelli v. Webster*, 552 F.3d 12, 18-19 (1st Cir. 2009).

The Supreme Court has explained that "[t]he touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Maryland v. Wilson*, 519 U.S. 408, 411 (1997) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977)). The reasonableness of a particular invasion "'depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id.* (quoting *Mimms*, 434 U.S. at 109). In the context of valid traffic stops - - that is, stops arising from traffic infractions - - ordering a passenger out of a stopped car is not an unreasonable intrusion in light of the counterbalancing factor of officer safety. *Id*. More generally, the Court instructs, "an officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

The Supreme Court has not yet addressed the issue of whether a police officer, without particularized suspicion that a passenger in a stopped vehicle poses a safety risk or is violating the law, may request identification from the passenger. The First Circuit, however, appears to have answered the question in the affirmative, holding that "unrelated matters an officer may probe include the identity of the detained individuals." *United States v. Fernandez*, 600 F.3d 56, 60 (1st Cir. 2010). In *Fernandez*, the passenger argued that, because he was wearing his seatbelt at the time of the traffic stop, the officer's request for identification was impermissible. The First Circuit disagreed, explaining that "the lawfulness of [the officer]'s request for Fernandez's

identification does not depend on whether he properly could be cited for a seat belt violation." *Id.* at 58. Rather, the First Circuit explained, the proper inquiry for Fourth Amendment purposes is whether the request "measurably extends the duration of the stop." *Id.* at 62. (quoting *Johnson*, 555 U.S. at 333).

Here, even if Santiago was wearing a seatbelt at the time of Keyes's otherwise lawful traffic stop, Keyes's inquiry, at least for constitutional purposes, was justified as long as the request did not improperly prolong the stop. Keyes asked for Plaintiff's identification, which was promptly produced, and then returned to his cruiser; he communicated the information to the State Police dispatcher, who informed him that there were two outstanding warrants for someone with Plaintiff's name and date of birth. At that point, in the court's view, Keyes had reasonable suspicion to investigate further and any reasonable delay attendant to that investigation was permissible. More to the point, perhaps, the facts do not lend themselves to a finding that Keyes's initial request measurably extended the duration of the initial stop which, in total, lasted no more than twenty minutes.[1]

ii. The arrest

The second part of Plaintiff's Fourth Amendment claim is that Keyes lacked probable cause to arrest him because of what Plaintiff asserts were the obvious discrepancies between Plaintiff's background and physical appearance and the information in the New York warrants. In essence, Plaintiff argues that no reasonable

---

[1] In so ruling, the court takes no position as to whether Keyes's actions might run afoul of Massachusetts law. *See United States v. Henderson*, 463 F.3d 27, 31-32 (1st Cir. 2006) (declining to decide legal question as to whether passenger could be cited for failing to wear a seatbelt on the facts presented).

officer could find probable cause where significant discrepancies exist between an individual's physical appearance and a warrant's description of those characteristics. To be sure, Plaintiff concedes that relatively minor discrepancies in physical features or other data do not render unreasonable an arrest pursuant to a facially valid warrant, but argues nonetheless that, "major discrepancies" do.  Here, Plaintiff asserts, those discrepancies are height differences (the warrants list variously 6'10", 6'9", 6'3" and 6'1",while Santiago is 5'8"), build (the warrants say big, while Santiago is heavy), race (the warrants say white, while Santiago is Hispanic), and, at least with regard to one of the warrants, different social security numbers.

Keyes, in response, minimizes the differences and, in any event, asserts that he is entitled to qualified immunity because a reasonable officer would have arrested Plaintiff after learning that the name and birth date matched outstanding warrants. Keyes, in the court's opinion, has the stronger argument.

"Qualified immunity is a judicial gloss designed to allow public officials to perform discretionary tasks without the constant threat of legal liability."  *Morelli,* 552 F.3d at 18. In determining whether an official is entitled to qualified immunity, "a court must decide whether the plaintiff has made out a violation of a constitutional right and, if so, whether the right was clearly established at the time of the violation."  *Drumgold v. Callahan*, - - F.3d - - , 2013 WL 376747, at * 11 (1st Cir. Jan. 31, 2013).  In determining the latter, the court must focus on "the clarity of the law at the time of the violation" and, in assessing the facts of the case, decide "whether a reasonable defendant would have understood that his conduct violated the plaintiff's constitutional rights."  *Id*. (internal citations omitted).

In the instant matter, Keyes would be entitled to qualified immunity if, given the described circumstances, a reasonable officer could have believed that probable cause existed to arrest Plaintiff. Probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [Keyes's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that an individual whose name and birth date were a match with outstanding warrants was, in fact, the subject of the warrants. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

The court concludes that Keyes has met these standards. He was told by the State Police dispatcher that there were two NCIC arrest warrants which matched Plaintiff's name and date of birth. Because Keyes received this information during a traffic stop, he had little time to investigate further. Thus, Keyes had probable cause to arrest Plaintiff based on the outstanding warrants even if the warrants later turned out to have been targeting another individual who had co-opted Plaintiff's identifying information. Accordingly, Keyes is entitled to qualified immunity with regard to Plaintiff's Fourth Amendment claim. *See Hunter,* 502 U.S. at 227 ("even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity") (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)) .

    b. Fourteenth Amendment Claim

Plaintiff's Fourteenth Amendment claim is also comprised of various scenarios which, from his perspective, amount to due process violations. Plaintiff's first argument appears to be that Keyes violated his due process rights by failing to release him despite (1) his claims of innocence and (2) discrepancies between the warrant and

Plaintiff's physical appearance that came to light once Plaintiff was at the State Police barracks. Keyes responds that, post-arrest, the decision to release Plaintiff was not his to make and that he was only required was bring him before a judge in a timely manner. Even viewing the facts in a light most favorable to Plaintiff, the court finds Keyes to have the better argument. *See Brady*, 187 F.3d at 111 ("once the arrest has been properly effected, it is the magistrate and not the policeman who should decide whether probable cause has dissipated to such an extent following arrest that the suspect should be released"). Keyes's motion for summary judgment, therefore, will be allowed in this regard.

Plaintiff nonetheless argues that Keyes thereafter violated his due process rights by withholding exculpatory information from the Hampden County District Attorney's office. Here, Plaintiff has the better argument. According to Plaintiff, after his initial court appearance on August 21, 2008, Assistant District Attorney James Channing (the "A.D.A.") - - evidently the "Richard Roe" named in Plaintiff's complaint but now dismissed from this action - - instructed Denise Smith-Carelock ("Carelock"), the clerk of the District Attorney's office in Chicopee, to contact Keyes to determine whether Plaintiff's fingerprints were a match for those in the Automated Fingerprint Identification System ("AFIS"). Carelock got in touch with a State Police dispatcher who told her that Keyes was on the road but that she would call him. Carelock states that the dispatcher made a call and then reported back to her that she, the dispatcher, was told that Plaintiff's fingerprints were checked through AFIS and that they were a match for those on the warrant. (Pl.'s SOF ¶ 32 (Document No. 74).) As a result, when Plaintiff returned to court on August 28, 2008, the A.D.A. told the judge that "the state police

11

indicate that when he was arrested last Wednesday night he was, in fact, fingerprinted. It did, in fact, go through AFIS, and they do, in fact, match." (Defs.' SOF (Document No. 64) Ex. 9 pg 27.) As came to be known, after Plaintiff had been detained for quite some time, there was no such match.

For his part, Keyes states that he never told anyone that the fingerprints were a match; rather, he avers, he informed someone at the D.A.'s office "that a search of AFIS revealed no match between Mr. Santiago's fingerprints and that despite there being no match Mr. Santiago was likely to be the person wanted under the NY warrants because of the match with the name, date of birth and social security number." (Defs.' SOF ¶ 39.) Keyes also argues that he is entitled to qualified immunity with regard to Plaintiff's claim.

As explained, a claim of qualified immunity requires a court to first determine whether a constitutional violation has occurred and then proceed to determine whether, in light of the facts and circumstances, a reasonable officer would have known that his actions violated "clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). While courts have repeatedly instructed that qualified immunity claims "'should be resolved, where possible, in advance of trial,' pre-trial resolution sometimes will be impossible because of a dispute as to material facts." *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002). That latter situation, in the court's view, is the situation here.

If, on the one hand, Keyes knowingly or recklessly provided false information pertaining to Plaintiff's fingerprints to the A.D.A., he would likely have violated Plaintiff's due process rights and would most likely not be entitled to qualified immunity because a

"similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir. 2004). If, on the other hand, a jury determines that Keyes properly relayed the information or had no role in informing the A.D.A. that the fingerprints were a match, then there is no constitutional violation and the inquiry would end. Accordingly, Keyes's motion for summary judgment with regard to Plaintiff's Fourteenth Amendment claim will be denied.

    2. <u>Intentional Infliction of Emotional Distress (Count Two)</u>

Keyes moves for summary judgment on this count as well, arguing that Plaintiff has not alleged any facts that would support a claim for intentional infliction of emotional distress. Plaintiff responds that Keyes's decision to arrest him without probable cause and then hold him resulted in emotional distress. The elements of a claim for intentional infliction of emotional distress require Plaintiff to demonstrate that: (1) Keyes intended to cause, or should have known that his conduct would cause, emotional distress; (2) Keyes's conduct was extreme and outrageous; (3) Keyes's actions caused him distress; and (4) the emotional distress sustained by him was severe and of a nature that no reasonable person could be expected to endure it. *See Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 318-19 (Mass. 1976).

Applying these standards, the court rules as follows. To the extent Plaintiff's claim is based on Keyes's decision to arrest him, it cannot survive summary judgment given the court's determination that the arrest was reasonable. If it turns out, however, that Keyes relayed false information to the A.D.A., a jury could find that such conduct satisfies the requisite elements to prevail on a claim for the intentional infliction of

emotional distress. In sum, Keyes's motion for summary judgment on this count will be allowed in part and denied in part in accord with the above analysis.

## C. State Police Department Motion for Summary Judgment

As described, two claims presently remain against the State Police Department: Count Three (gross negligence/ unconstitutional police or custom) and Count Four (negligence pursuant to the Massachusetts Tort Claims Act ("MTCA")). The State Police Department has moved for summary judgment on both counts.

### 1. Gross Negligence/ Negligent training, supervision, control, or investigation

With regard to Count Three, the State Police Department argues that it is entitled to summary judgment because there is no evidence to support Plaintiff's claim of negligent training, supervision, control, or investigation. Plaintiff objects to that characterization but completely fails to direct the court to any evidence in support of his claim. Accordingly, the court will allow the motion for summary judgment with regard to Count Three.

### 2. MTCA

In applicable part, the MTCA states that "public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." Mass. Gen. Laws Ch. 258 § 2. The State Police Department argues that it is entitled to summary judgment on this count based on several exemptions in the Act, specifically, exemptions under Chapter 258 § 10(a), 10(b), 10(h), and 10(j). In the court's opinion, these exemptions, with one exception (section 10(b)), are inapplicable to Plaintiff's remaining claim that Keyes negligently or wrongfully relayed false

14

information to the District Attorney's office.

Relying on section 10(b), the State Police Department argues that it is exempt from liability for injury resulting from any negligence by Keyes in his performance of "discretionary duties." Section 10(b) provides that Chapter 258 shall not apply to a public employer for

> any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused.

Chapter 258 § 10(b). The State Police Department asserts that Keyes would have been performing a discretionary function when reporting whether Plaintiff's fingerprints were a match.

The Massachusetts Supreme Judicial Court has adopted a two-step inquiry crafted by the Supreme Court for determining whether particular actions are discretionary. "'The first step . . . is to determine whether the governmental actor had any discretion at all as to what course of conduct to follow . . . The second and far more difficult step is to determine whether the discretion that the actor had is that kind of discretion for which 10(b) provides immunity from liability.'" *Sena v. Com.*, 629 N.E.2d 986, 990 (Mass. 1994) (quoting *Harry Stoller & Co. v. City of Lowell*, 587 N.E.2d 780, 782 (Mass. 1992)).

With regard to step one, the court concludes that it is unlikely that a state police officer may choose to do anything other than relay accurate information to a district attorney's office charged with prosecuting an individual arrested by that officer. Indeed, the Supreme Judicial Court has recognized "that an officer who carelessly or recklessly

misstates or fails to disclose relevant information he has to a magistrate evaluating a warrant application, and thereby subverts the integrity of the warrant process by selling the magistrate shoddy merchandise without appropriate disclaimers would likely not be engaged in a discretionary activity for purposes of the discretionary functions exemption." *Sena*, 629 N.E.2d at 990, n. 5. (internal quotation marks omitted). Looking at the facts in a light most favorable to Plaintiff, the court cannot say that Keyes's actions fit within the section 10(b) exemption.

Even if such a course of action were somewhat discretionary, the State Police Department's argument still fails when considering the second step of the analysis, which "is far narrower" than discretion in the ordinary sense of the word. *Harry Stoller & Co*, 587 N.E.2d at 783. In essence, the section 10(b) exemption and resulting immunity is only available "for discretionary conduct that involves policymaking or planning." *Id.* By way of example, such conduct generally includes "decisions of law enforcement officers regarding whether, when, how, and whom to investigate, and whether and when to seek warrants for arrest [which] are based on considerations of, and necessarily affect, public policy." *Sena,* 629 N.E.2d at 990. However and whatever Keyes may have relayed to the District Attorney's Office, the communication of information regarding a "match" of Plaintiff's fingerprints to those on a warrant cannot be construed as involving policymaking or planning or left to the discretion of an individual officer. In sum, the court is not convinced that Keyes was performing a discretionary function for purposes of section 10(b). Accordingly, the State Police Department's motion for summary judgment on Count Four will be denied.

III. CONCLUSION

For the reasons explained, Rivera's motion for summary judgment as to Count One (Document No. 60) is ALLOWED, Keyes's motion for summary judgment (Document No. 62) is ALLOWED as to that part of Count One alleging violation of Plaintiff's Fourth Amendment rights but DENIED with respect to Plaintiff's Fourteenth Amendment rights and as to Count Two as well.  Finally, the State Police Department's motion for summary judgment (Document No. 58) is ALLOWED with regard to Count Three but DENIED with regard to Count Four.  The Clerk shall set this matter down for a pretrial conference and trial.

IT IS SO ORDERED.

DATED: February 22, 2013

                                           /s/ Kenneth P. Neiman
                                          KENNETH P. NEIMAN
                                          U.S. Magistrate Judge